STANLEY GOFF (Bar No. 289564)
LAW OFFICE OF STANLEY GOFF
15 Boardman Place Suite 2
San Francisco, CA 94103
Telephone: (415) 571-9570
Email: scraiggoff@aol.com

FULVIO F. CAJINA (Bar No. 289126)
LAW OFFICE OF FULVIO F. CAJINA
311 Oak Street, Suite 108
Oakland, CA 94607
Telephone: (415) 601-0779
Facsimile: (510) 225-2636
Email: fulvio@cajinalaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BARRERA; CHRISTINE AMARO; MP, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JANET PALOMINO; MB, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JESSICA MCGEE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WOODLAND; SERGEANT KRAUSE; SERGEANT DAVIS; OFFICER WRIGHT; OFFICER GRAY; OFFICER LAL and DOES 1-25;<br><br>Defendants. | CASE NO.: 2:18-cv-00329-JAM-KJN<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Violation of Decedent's Fourth Amendment Rights 42 U.S.C §1983 (Excessive Force and *Monell*);<br>2. Violation of Decedent's Fourteenth Amendment Rights 42 U.S.C §1983 (Due Process);<br>3. Violation of Plaintiffs' Fourteenth Amendment Rights, 42 U.S. §1983 (Familial Relations and *Monell*);<br>4. Violation of 42 U.S.C. § 12132 (ADA Discrimination);<br>5. Wrongful Death/Negligence;<br>6. Assault and Battery; and<br>7. Bane Act Violation<br><br>**DEMAND FOR JURY TRIAL** |

1

Plaintiffs, demanding a jury trial, bring this action against Defendants CITY OF WOODLAND, SERGEANT KRAUSE; SERGEANT DAVIS; OFFICER WRIGHT; OFFICER GRAY; OFFICER LAL, and DOES 1-25, inclusive, for general, consequential, compensatory, punitive and statutory damages, costs and attorneys' fees resulting from defendants' unconstitutional and tortious conduct, and as grounds therefore allege as follows:

## I. PARTIES

1. Plaintiff MP, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JANET PALOMINO is an individual and natural heir, successor in interest and survivor of decedent, Michael Barrera, her father. She is a person described in California Code of Civil Procedure §377.60 as persons who may bring a wrongful death action and who would be entitled to the property of the decedent through intestate succession. At all times relevant to this complaint, MP has lived in the City of Woodland, which is located within the Eastern District of California.

2. Plaintiff MB, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JESSICA MCGEE is an individual and natural heir, successor in interest and survivor of decedent, Michael Barrera, her father. She is a person described in California Code of Civil Procedure §377.60 as persons who may bring a wrongful death action and who would be entitled to the property of the decedent through intestate succession. At all times relevant to this complaint, MB has lived in the City of Woodland, which is located within the Eastern District of California.

3. Plaintiff DANIEL BARRERA is an individual and father of the decedent, Michael Barrera. At all times relevant to this complaint, Mr. BARRERA has lived in the City of Woodland, which is located within the Eastern District of California.

4. Plaintiff CHRISTINE AMARO is an individual and mother of the decedent, Michael Barrera. At all times relevant to this complaint, Ms. AMARO has lived in the City of Woodland, which is located within the Eastern District of California.

5.  Defendant CITY OF WOODLAND ("WOODLAND") is a legal entity established under the laws of the state of California with all the powers specified and necessarily implied by the Constitution and laws of the State of California. WOODLAND is a municipality located within the Eastern District of California.

6.  [*Left intentionally blank*.]

7.  Defendant SERGEANT KRAUSE is an individual. KRAUSE is, and was at all times relevant to this complaint, employed by WOODLAND as a police officer and was acting under the color of law as it pertains to this complaint. KRAUSE is being sued in his individual capacity.

8.  Defendant SERGEANT DAVIS is an individual. DAVIS is, and was at all times relevant to this complaint, employed by WOODLAND as a police officer and was acting under the color of law as it pertains to this complaint. DAVIS is being sued in his individual capacity.

9.  Defendant OFFICER WRIGHT is an individual. WRIGHT is, and was at all times relevant to this complaint, employed by WOODLAND as a police officer and was acting under the color of law as it pertains to this complaint. WRIGHT is being sued in his individual capacity.

10. Defendant OFFICER GRAY is an individual. GRAY is, and was at all times relevant to this complaint, employed by WOODLAND as a police officer and was acting under the color of law as it pertains to this complaint. GRAY is being sued in his individual capacity.

11. Defendant OFFICER LAL is an individual. LAL is, and was at all times relevant to this complaint, employed by WOODLAND as a police officer and was acting under the color of law as it pertains to this complaint. LAL is being sued in his individual capacity.

12. Defendants Does 1-25 are defendants whose capacities are unknown to plaintiffs.

13. All defendants acted under the color of law as it pertains to this complaint.

///

## II. JURISDICTION AND VENUE

14. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988 and 12132 and the Fourth and Fourteenth Amendments to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction over plaintiffs' claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). This Court has further jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367 as those claims form part of the same case and controversy under Article III of the United States Constitution.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred in the County of Yolo, which is located in this district.

## III. STATEMENT OF FACTS

16. On February 8, 2017, at approximately 12:35 p.m., decedent Michael Barrera was walking outside his apartment complex in Woodland, California while suffering from a psychological breakdown. Barrera suffered from bipolar disorder and had a history of manic sever psychotic features. Neighbors observing decedent reported that he was walking while wrapped in a towel and possibly carrying a golf club. The neighbors called the WOODLAND Police Department.

17. WOODLAND police officers, Defendants WRIGHT, LAL, GRAY, and Sergeants DAVIS and KRAUSE reported to the scene. Decedent was well known to several of the officers present given that several of those officers, including Officer WRIGHT, had previously helped paramedics place decedent in 5150 psychiatric holds. Decedent had been held in psychiatric holds twice since December 2016.

18. According to the District Attorney's investigation, the officers followed Barrera as he walked from Matmor Road to Garfield Place in Woodland. The officers cornered Barrera in a cul-de-sac and proceeded to engage with him. Several officers, with guns and Tasers drawn,

4

surrounded Barrera. He was given verbal commands but, due to his impaired cognition, was unable to follow those. A physical struggle ensued.

19. According to the officers' account, the struggle occurred on a wet, muddy patch of ground. Sergeant DAVIS brought Michael to the ground and at that instant Officer LAL deployed his Taser into Barrera's lower hip area. During this same period, Sergeant KRAUSE took control of Barrera's arm.

20. While Barrera was already lying face down, prone on the ground with both Sergeant DAVIS and Sergeant KRAUSE restraining him, Officer LAL deployed his Taser a second time through a three-point contact. At the same time, Sergeant DAVIS struck Barrera's face and neck area multiple times. Officer LAL Tasered Barrera a third time.

21. After the third Taser deployment, and while Sergeant DAVIS and Sergeant KRAUSE restrained him, and Sergeant DAVIS struck Barrera some more. Officer WRIGHT took control of one of Barrera's arms, while Officer GRAY took control of Barrera's legs.

22. Shortly thereafter, the defendants were able to secure handcuffs on Barrera, who, by that time, was telling the officers that he could not breathe. The officers continued to keep Barrera in a prone position in the mud, with Officer WRIGHT placing his body weight on Barrera, as he placed his knee between Barrera's shoulders. Barrera was being asphyxiated by the officers.

23. Due to his inability to breathe along with the other trauma that Barrera endured, Barrera began vomiting and liquid starting coming out of his mouth. Barrera became unresponsive and the defendant officers could not find a pulse. The officers began CPR. At 1:41 p.m., after being transported to Woodland Memorial Hospital, where Barrera had been 5150-ed weeks before, Barrera was pronounced dead.

24. Upon information and belief, as part of their jobs, WOODLAND police officers regularly interact with members of the community suffering from psychiatric or psychological problems.

25. Upon information and belief, WOODLAND does not train, or inadequately trains its

5

officers in how to deal with persons suffering from psychiatric or psychological problems. Furthermore, WOODLAND has a widespread or longstanding custom and practice of not providing assistance to individuals suffering from psychiatric or psychological problems, which failures, together with its lack of, or inadequate, training amounts to deliberate indifference towards the constitutional rights of individuals suffering from psychiatric or psychological problems.

26. Upon information and belief, Dan Bellini was the chief and final policymaker for the WOODLAND Police Department at the time of the incident in question. In that capacity, Chief Bellini was responsible for implementing policies at the WOODLAND police department that have led to the lack of, or inadequacy, of training for WOODLAND officers in the use of force in the field and on how to deal with persons suffering from psychiatric or psychological problems. Furthermore, under Bellini, the WOODLAND police department has had, maintained, and fostered a widespread or longstanding custom and practice of not providing assistance to individuals suffering from psychiatric or psychological problems and of not properly training staff to interact with both persons suffering from psychiatric or psychological problems and their families, who are the ones who often call WOODLAND police officers for help.

27. Decedent was a qualified individual with a recognized disability pursuant to 42 U.S.C. § 12132.

28. Plaintiffs MB and MP by and though their Guardians Ad Litem, filed timely government claims against defendants pursuant to California Government Code §910, et seq., for negligence and wrongful death, assault and battery, Bane Act Violation, Plaintiffs' claims were subsequently rejected by WOODLAND. Plaintiffs MB and MP have filed, through their guardians ad litem, section 377.32 declarations.

///

///

# IV. CAUSES OF ACTION

## FIRST CLAIM

**(Violation of Decedent's Fourth Amendment Rights 42 U.S.C §1983 (Excessive Force and *Monell*) – As to All Defendants)**

31. Plaintiffs incorporate herein by reference the preceding paragraphs of this complaint as fully set forth herein.

32. Plaintiffs MB and MP are the heirs and successors in interest of decedent and accordingly have standing under Code of Civil Procedure section 377.30 to bring this claim.

33. All named defendant officers, KRAUSE, DAVIS, WRIGHT, GRAY and LAL (the "DEFENDANT OFFICERS") and Does 1-25, acting under color of law, used unreasonable and excessive force on February 8, 2017, by deliberately and intentionally beating, excessively restraining, Tasing and ultimately killing decedent when, among other things, (i) decedent had not committed any crime; (ii) decedent was unarmed; (iii) decedent did not pose any threat to defendant, other officers or bystanders; (iv) defendant knew, or should have known, that decedent was suffering from a mental or psychological disability; and (v) other alternative methods were available to effectuate a seizure. Such actions were in conscious and reckless disregard of the risk of injury and death and under the circumstances there was no objectively reasonable basis for the defendants' actions.

34. Defendant WOODLAND and Does 1-25 deprived decedent of his rights, privileges, and immunities secured by the United States Constitution by, among other things, not training, or inadequately training, its officers on how to deal with persons suffering from psychiatric or psychological problems. Defendant WOODLAND also has a widespread or longstanding custom and practice ratifying excessive force and of not providing assistance to individuals suffering from psychiatric or psychological problems, which failures, together with its lack of, or inadequate, training of its officers amounts to deliberate indifference towards the constitutional

7

rights of individuals, such as decedent, suffering from psychiatric or psychological problems. Bellini, in his capacity as Chief of Police and also as the final policymaker for the WOODLAND police department, was a moving force behind the above failure/inadequacy to train and custom and practice at the time of the incident in question.

35. As a direct result of the named DEFENDANT OFFICERS, WOODLAND, and Does 1-25's actions and inactions, decedent's constitutional rights were violated, resulting in decedent's death.

36. The conduct of the named DEFENDANT OFFICERS and Does 1-25, as alleged, was intended to cause injury to Michael Barrera and was done in conscious disregard of Michael Barrera's rights and safety and thus constitutes malice. In addition, by his conduct, the DEFENDANT OFFICERS subjected Michael Barrera to cruel and unjust hardship in conscious disregard of his civil rights, thus constituting oppression.  Because the above acts were performed in a malicious, and/or oppressive manner, decedent is entitled to recover punitive damages from named DEFENDANT OFFICERS and Does 1-25 in an amount according to proof.

## SECOND CLAIM

**(Violation of Decedent's Fourteenth Amendment Rights 42 U.S.C §1983 (Due Process) – As to all DEFENDANT OFFICERS and Does 1-25)**

37. Plaintiffs incorporate herein by reference the preceding paragraphs of this complaint as fully set forth herein.

38. Plaintiffs MB and MP are the heirs and successors in interest of decedent and accordingly have standing under Code of Civil Procedure section 377.30 to bring this claim.

39. Plaintiffs MB and MP alleges that DEFENDANT OFFICERS and Does 1-25 deprived decedent of his Fourteenth Amendment rights, and those rights and privileges and immunities secured by the Constitution and applied to the states through the Fourteenth Amendment by

deliberately and intentionally beating, excessively restraining, Tasing and ultimately killing decedent when, among other things, (i) decedent had not committed any crime; (ii) decedent was unarmed; (iii) decedent did not pose any threat to defendant, other officers or bystanders; (iv) defendant knew, or should have known, that decedent was suffering from a mental or psychological disability; and (v) other alternative methods were available to effectuate a seizure. Moreover, despite the fact that decedent stated on multiple occasions that he could not breathe, the DEFENDANT OFFICERS took no immediate actions to ensure the decedent would not suffer a serious medical condition. Such actions were outrageous and shock the conscience.

40. DEFENDANT OFFICERS and Does 1-25's actions violated decedent's constitutional rights and resulted in decedent's suffering and death, and were a proximate and direct cause of decedent injuries arising from decedent's wrongful death.

41. The conduct of DEFENDANT OFFICERS and Does 1-25, as alleged, was intended to cause injury to Michael Barrera and was done in conscious disregard of Michael Barrera's rights and safety and thus constitutes malice. In addition, by his conduct, DEFENDANT OFFICERS subjected Michael Barrera to cruel and unjust hardship in conscious disregard of Michael Barrera's civil rights, thus constituting oppression.  Because the above acts were performed in a malicious, and/or oppressive manner, plaintiff is entitled to recover punitive damages from DEFENDANT OFFICERS and Does 1-25 in an amount according to proof.

**THIRD CLAIM**

**(Violation of Plaintiffs' Fourteenth Amendment Rights, 42 U.S. §1983 (Familial Relations)**
**- As to All Defendants)**

42. Plaintiffs incorporate herein by reference the preceding paragraphs of this complaint as fully set forth herein.

43. Plaintiff CHRISTINE AMARO is decedent's mother. Plaintiff DANIEL BARRERA is decedent's father.

44. Plaintiffs CHRISTINE AMARO and DANIEL BARRERA have a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including, but not limited to, the unwarranted state interference in their familial relationship with their son, decedent Michael Barrera.

45. Plaintiff MB, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JESSICA MCGEE is the daughter, heir, and successor in interest of decedent.

46. Plaintiff MB, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JESSICA MCGEE has a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including, but not limited to, the unwarranted state interference in her familial relationship with her father, decedent Michael Barrera.

47. Plaintiff MP, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JANET PALOMINO is the daughter, heir, and successor in interest of decedent.

48. Plaintiff MP, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JANET PALOMINO has a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including, but not limited to, the unwarranted state interference in her familial relationship with her father, decedent Michael Barrera.

49. Defendant Officers and Does 1-25 deprived plaintiffs of their Fourteenth Amendment rights, and those rights and privileges and immunities secured by the Constitution and applied to the states through the Fourteenth Amendment by deliberately and intentionally beating, excessively restraining, Tasing and ultimately killing decedent when, among other things, (i)

decedent had not committed any crime; (ii) decedent was unarmed; (iii) decedent did not pose any threat to defendant, other officers or bystanders; (iv) defendant knew, or should have known, that decedent was suffering from a mental or psychological disability; and (v) other alternative methods were available to effectuate a seizure. Such actions were outrageous and shock the conscience.

50. Additionally, Defendant WOODLAND deprived plaintiffs of their Fourteenth Amendment rights, and those rights and privileges and immunities secured by the Constitution and applied to the states through the Fourteenth Amendment by, among other things, not training, or inadequately training, its officers on how to deal with persons suffering from psychiatric or psychological problems. Defendant WOODLAND also has a widespread or longstanding custom and practice of not providing assistance to individuals suffering from psychiatric or psychological problems, which failures, together with its lack of, or inadequate, training of its officers amounts to deliberate indifference towards the constitutional rights of individuals, such as Michael Barrera, suffering from psychiatric or psychological problems. Bellini, in his capacity as Chief of Police, is a moving force behind the above failure/inadequacy to train and custom and practice.

51. The aforementioned actions of defendants, while acting under color of state law, and without due process of law, violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with decedent.

## FOURTH CLAIM

**(Violation of 42 U.S.C. § 12132 (ADA Discrimination) − As to Defendant WOODLAND)**

52. Plaintiffs incorporate herein by reference the preceding paragraphs of this complaint as fully set forth herein.

53. Plaintiffs MB and MP are the heirs and successors in interest of decedent and accordingly have standing under Code of Civil Procedure section 377.30 to bring this claim.

54. As against Defendant WOODLAND, plaintiffs MB and MP further allege that defendant WOODLAND failed to train, supervise, and or discipline Defendant Officers and DOES 1-25 in recognizing symptoms of disability under Title II of the Americans With Disabilities Act and from excluding qualified individuals, such as decedent, from participating in or denying benefits and services provided by Defendant WOODLAND; or from otherwise discriminating against such qualified individuals with symptoms of disability recognized under Title II of the Americans with Disabilities act, resulting in the unwarranted seizure of decedent during the course of the subject-incident and which ultimately resulted in his death. Plaintiff further alleges that qualified individuals, such decedent, were discriminated against from participating in or denying benefits and services provided by Defendant WOODLAND; or from otherwise discriminating against such qualified individuals with symptoms of disability recognized under Title II of the Americans with Disabilities act, resulting in the unwarranted seizure of decedent during the course of the subject-incident and which ultimately resulted in his death.

55. Bellini, in his capacity as Chief of Police, was a moving force behind the above failure/inadequacy to train, custom and practice, and the violations of Title II of the Americans with Disabilities act.

56. At the time DEFENDANT OFFICERS and Does 1-25 made contact with decedent they knew and/or had reason to know that decedent was experiencing a mental crisis and were aware of decedent's disability and the symptoms and manifestations of decedent's recognized disability, and yet these Defendants decided to unlawfully seize decedent, further exacerbating his mental health crisis. In addition, DEFENDANT OFFICERS and Does 1-25 failed to provide reasonable accommodations during their encounter with decedent by failing: to follow inter-departmental and industry-wide accepted protocols when encountering mentally unstable suspects. Instead, DEFENDANT OFFICERS beat, Tasered and ultimately killed the unarmed decedent who was

suffering from a mental health crisis.

57. The aforementioned conduct of Defendant WOODLAND, by and through its agents and employees, in failing to make reasonable accommodations for, and prevent discrimination against, decedent denied him the benefits of Defendant WOODLAND'S programs and activities, and/or discriminated against decedent by reason of his recognized disability.

### FIFTH CAUSE OF ACTION

### (Wrongful Death – Negligence – As to All Defendants)

58. Plaintiffs incorporate herein by reference the preceding paragraphs of this complaint as fully set forth herein.

59. Plaintiff MP, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JANET PALOMINO is the daughter, heir, and successor in interest of decedent and accordingly has standing under Code of Civil Procedure section 377.60 to bring this claim.

60. Plaintiff MB, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JESSICA MCGEE is the daughter, heir, and successor in interest of decedent and accordingly has standing under Code of Civil Procedure section 377.60 to bring this claim.

61. Defendants and DOES 1 – 25 inclusive, by and through their respective agents and employees, proximately caused the death of decedent February 8, 2017 as a result of their negligent conduct and/or negligent failure to act as set-forth herein.

62. As an actual and proximate result of said defendants' negligence, and the death of decedent, plaintiffs have sustained pecuniary loss resulting from the loss of comfort, society, attention, services, and support of their father, decedent, in an amount according to proof at trial.

63. As a further actual and proximate result of said defendants' negligence, plaintiffs incurred funeral and burial expenses, in an amount according to proof at trial.

64. Pursuant to California C.C.P. Sections 377.60 and 377.61, plaintiffs have brought this action, and claim damages from said defendants for the wrongful death of decedent and resulting

13

injuries. Defendant WOODLAND is vicariously liable for the torts of its officers, who were acting within the scope of their employment with WOODLAND at the time of the incident pursuant to California Government Code §815.2.

### SIXTH CAUSE OF ACTION

(**Assault and Battery – As to All DEFENDANT OFFICERS, WOODLAND and DOES 1-25**)

65. Plaintiffs incorporate herein by reference the preceding paragraphs of this complaint as fully set forth herein.

66. Plaintiff MP, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JANET PALOMINO is the daughter, heir, and successor in interest of decedent and accordingly has standing under Code of Civil Procedure section 377.30 to bring this claim.

67. Plaintiff MB, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JESSICA MCGEE is the daughter, heir, and successor in interest of decedent and accordingly has standing under Code of Civil Procedure section 377.30 to bring this claim.

68. Defendant Officers and DOES 1-25 while working as police officers for WOODLAND, and acting within the course an scope of their duties, intentionally struck, tased and prevented the decedent from being able to breathe without decedent's consent.

69. As a result of the actions of these defendants, decedent ultimately died from his injuries. Defendant Officers and DOES 1-25 did not have legal justification for using the force against decedent, and these Defendants' use of force while carrying out their police officer duties was an unreasonable use of force. Defendant WOODLAND is vicariously liable for the torts of its officers, who were acting within the scope of their employment with WOODLAND at the time of the incident pursuant to California Government Code §815.2.

70. Defendant Officers and DOES 1-25's conduct as described above was willful, malicious, oppressive, knowing, and intentional; accordingly, plaintiff seeks an award of

punitive and exemplary damages in an amount according to proof for damages caused by defendants' conduct.

## SEVENTH CAUSE OF ACTION

**(BANE ACT VIOLATION – As to All DEFENDANT OFFICERS, WOODLAND and DOES 1-25)**

71. Plaintiffs incorporate herein by reference the preceding paragraphs of this complaint as fully set forth herein.

72. Plaintiff MP, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JANET PALOMINO is the daughter, heir, and successor in interest of decedent and accordingly has standing under Code of Civil Procedure section 377.30 to bring this claim.

73. Plaintiff MB, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM JESSICA MCGEE is the daughter, heir, and successor in interest of decedent and accordingly has standing under Code of Civil Procedure section 377.30 to bring this claim.

74. Defendant Officers and DOES 1-25 while working as police officers for WOODLAND and acting within the course an scope of their duties, intentionally struck and tased decedent.

75. Defendant Officers interfered with the decedent's Fourth amendment right to be free from the unlawful seizure of his person through the exercise of excessive force when they intentionally struck and Tasered decedent and prevented him from breathing.

76. That upon observing the DEFENDANT OFFICERS exercising excessive force upon his person, the decedent reasonably believed that if he exercised his right to be free from the unlawful use of excessive force upon his person, that the DEFENDANT OFFICERS would commit violence against him.

77. That DEFENDANT OFFICERS injured the decedent to prevent him from exercising these rights.

78. That decedent was harmed because he suffered physical injuries, as well as severe

emotional stress as a result of the violent acts imposed on him by the DEFENDANT OFFICERS; and

79. The DEFENDANT OFFICERS use of excessive force to prevent the decedent from exercising his rights was a substantial factor in causing his harm.

80. Defendant WOODLAND is vicariously liable for the torts of its officers, who were acting within the scope of their employment with WOODLAND at the time of the incident, pursuant to California Government Code §815.2.

## V. PRAYER FOR RELIEF

Plaintiffs pray for judgment against defendants as follows:

1. For compensatory damages and other special damages according to proof;
2. For general damages according to proof;
3. For punitive damages against all individual defendants according to proof;
4. The prejudgment interest at the legal rate according to proof;
5. For costs and reasonable attorneys' fees as provided by law; and
6. For such other relief as the Court may deem fit and proper.

## VI. JURY DEMAND

Plaintiffs demand a jury trial in this action.

Respectfully submitted,

LAW OFFICE OF FULVIO F. CAJINA

Dated: June 22, 2018     /s/ Fulvio F. Cajina
FULVIO F. CAJINA
Attorneys for Plaintiffs


LAW OFFICE OF STANLEY GOFF

Dated: June 22, 2018     /s/ STANLEY GOFF
STANLEY GOFF
Attorneys for Plaintiffs

16