**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 17 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DANIEL BARRERA; et al.,<br><br>            Plaintiffs-Appellees,<br><br> v.<br><br>DAVID KRAUSE, Sergeant; et al.,<br><br>            Defendants-Appellants,<br><br> and<br><br>CITY OF WOODLAND; DAN BELLINI, Former Police Chief,<br><br>            Defendants. | No.    22-15542<br><br>D.C. No.<br>2:18-cv-00329-JAM-KJN<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Submitted February 15, 2023[**]
San Francisco, California

Before: WARDLAW, NGUYEN, and KOH, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Defendants Officer Richard Wright, Officer Parveen Lal, Officer Hannah Gray, Sergeant Thomas Davis, and Sergeant David Krause (collectively "Defendants") appeal the district court's order denying summary judgment on qualified immunity grounds. Daniel Barrera, Christine Amaro, and two minors (collectively the "Barrera family") brought this wrongful death action pursuant to 42 U.S.C. § 1983 individually and as successors-in-interest to their son and father Michael Barrera ("Barrera"), alleging claims of excessive force under the Fourth Amendment and loss of familial relationships under the Fourteenth Amendment. The district court denied the Defendants' motion for summary judgment, finding that there were "just far too many genuine issues of material fact for this Court to grant summary judgment, even for the individuals." We affirm in part and dismiss and remand in part.

1.  "Under 28 U.S.C. § 1291, we normally have no jurisdiction to hear interlocutory appeals from the denial of summary judgment." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 944 (9th Cir. 2017). Summary judgment denials on qualified immunity grounds, however, are "appealable 'final decisions' because '[q]ualified immunity is immunity from suit, not just a defense to liability.'" *Id.* at 944–45 (alteration in original) (quoting *Knox v. Sw. Airlines*, 124 F.3d 1103, 1106 (9th Cir. 1997)). However, while "[w]e must accept the district court's determination that there is a genuine dispute" of fact as to the

circumstances under which Barrera died, we may review whether the Defendants are entitled to qualified immunity on summary judgment by construing the facts in the light most favorable to the Barrera family and analyzing: "(1) whether the defendant[s] violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Id.* at 945.

  2. The district court did not err by concluding that the Defendants were not entitled to qualified immunity on summary judgment as to the excessive force claims under the Fourth Amendment.  The Barrera family presents evidence that the Defendants targeted Barrera, an unarmed man suffering from mental illness, tased him in violation of Woodland Police Department (the "Department") policy, dog-piled on top of him as he lay prone on the pavement, and continued to hold him down on his stomach with the full weight of their bodies for a total of four minutes until Barrera asphyxiated, while Barrera was handcuffed and stating that he could not breathe.  While the Defendants dispute this version of events, viewing the facts in the light most favorable to the Barrera family, their conduct violated law clearly established in *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003), which held that "compression asphyxia"—particularly where a detainee was mentally ill, unarmed, restrained and begging for air—constituted excessive force that "any reasonable officer would have known . . . amounted to a constitutional violation." *Id.* at 1062.  And Defendants' own

3

deposition testimony confirms that Department officers were trained to roll over a detainee if he was struggling to breathe or already handcuffed, due to the risk of potential asphyxiation. *Drummond* is sufficiently similar to this case that the Defendants would have been on notice that, when Barrera was handcuffed and prone on the ground, additional restraint, as applied here, is unconstitutionally excessive.

Similarly, while Defendants contend that it was not clearly established that the misuse of a Taser can constitute excessive force, our precedent dictates that the excessive use of a Taser can be a violation of the Fourth Amendment. The Barrera family alleges that Lal tased Barrera four times for a total of 24 seconds, in excess of Department policy instructing officers to apply the Taser for a five-second cycle and then reevaluate the situation before using it again. In *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) (en banc), we held that multiple applications of a taser, even in the less forceful "drivestun mode," can constitute unreasonable and unconstitutionally excessive force. *Id.* at 446. A reasonable jury could therefore conclude that the application of the Taser here was unreasonable in light of the government interests at stake, and that the Defendants violated clearly established law as well as Department policy when they tased Barrera. *See id.* at 443–46.

Finally, while Defendants appear to argue that the district court should have granted qualified immunity to individual Defendants, genuine disputes of material

fact preclude us from reviewing and determining individual responsibility for the alleged incident and making a qualified immunity determination on a person-by-person basis. Viewing the facts in the light most favorable to the Barrera family, each Defendant was an "integral participant" in the unconstitutional use of force. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) (explaining that "each officer's actions themselves" need not "rise to the level of a constitutional violation" for Fourth Amendment liability to attach). Therefore, the district court properly denied qualified immunity to each Defendant on the excessive force claims.

    3.    However, because we cannot discern from the district court's order the basis on which it denied the Defendants' assertion of qualified immunity on the Fourteenth Amendment loss of familial relationship claim, we remand to the district court to clarify its order as to that claim. We have encouraged district courts to clearly "articulate the basis upon which they deny qualified immunity." *Maropulos v. County of Los Angeles*, 560 F.3d 974, 976 (2009) (per curiam). "Where, as here, 'we cannot tell for sure' what action the district court took with respect to [the Defendants'] assertion of qualified immunity, 'we must either try to discern from the record' what the district court did 'or remand for the district court to explain its reasoning.'" *Ballou v. McElvain*, 29 F.4th 413, 428 (9th Cir. 2022) (quoting *Maropulos*, 560 F.3d at 975).

Here, the district court did not articulate the triable issues of fact, nor did it explain why, viewing those facts in the light most favorable to the Barrera family, the encounter violated "clearly established" law under the Fourteenth Amendment. It simply pointed to our decision in *Drummond*, which concerned excessive force claims under the Fourth Amendment, and held that there were too many disputed facts to grant the Defendants qualified immunity on all claims.  A Fourteenth Amendment claim requires a showing that the Defendants engaged in conduct that "shocks the conscience," a more demanding standard than a Fourth Amendment excessive force claim.  *Lam v. City of Los Banos*, 976 F.3d 986, 1003 (9th Cir. 2020).  Whether qualified immunity bars these claims is therefore a closer, fact-bound question.  As "we cannot undertake appellate review effectively when forced to guess what the district court did in order to determine whether we even have jurisdiction," we remand the Fourteenth Amendment claims so that the district court can "spell out the triable issues and why they preclude immunity before trial." *Maropulos*, 560 F.3d at 975–76.

    4.      Finally, the district court did not err in holding that the Barrera family, including the children, has standing to bring this action.  The Defendants assert that they appeal the district court's standing determination not on the basis of "the particular parent-child interactions" but based on "the nature of [Barrera's] death," which they characterize as accidental.  However, it is unclear how the "nature of

the death" implicates standing as a matter of law, and the parties dispute whether the death was "accidental" or not.

**AFFIRMED IN PART; DISMISSED AND REMANDED IN PART.**