UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BARRERA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF WOODLAND, et al.,<br><br>　　　　Defendants. | No.  2:18-cv-00329-JAM-KJN<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT ON<br>FAMILIAL ASSOCIATION CLAIM** |

　　　The matter is before the Court on Defendants' Motion for Summary Judgment following an appeal and remand from the Ninth Circuit.  See Defs.' Mot. for Summary Judgment, ECF No. 66.  The Ninth Circuit vacated and remanded the Court's order denying qualified immunity to Defendants Gray, Wright, Lal, Davis, and Krause on Plaintiffs' Fourteenth Amendment familial association claim.  See USCA Mandate, ECF No. 102.  Having reviewed the parties' supplemental briefs, the record, and applicable authority, the Court grants qualified immunity for Defendants Gray, Wright, Lal, Davis, and Krause on Plaintiffs' familial association claim.  See Pls.' Suppl. Brief, ECF No. 107; Defs.' Suppl. Brief, ECF No. 106.

1

I.   BACKGROUND

On February 8, 2017, at 12:15 p.m., Woodland Police Department received a report of a Hispanic man in his forties, walking around a residential neighborhood cursing and waving a weapon, later identified as a golf club. Defs.' Statement of Undisputed Facts (SUF) 1-3, ECF No. 72-2. Woodland Police Officer Parveen Lal, Sergeant David Krause, and Sergeant Thomas Davis responded to the dispatch and approached in separate patrol units. SUF 2.

Sergeant Krause was first to find Decedent Michael Barrera walking on Garfield Place. SUF 5. Sergeant Krause broadcasted his location and reported a bald Hispanic man carrying a golf club in one hand and a towel in another. Id. Sergeant Krause parked his vehicle, exited his vehicle, and unholstered his firearm. SUF 6. Sergeant Krause ordered Barrera to stop, but he continued walking. SUF 8. Sergeant Davis and Officer Lal arrived seconds after Sergeant Krause. SUF 9. Sergeant Davis exited his vehicle without weapons in hand. SUF 12. Officer Lal also exited his vehicle, drew his taser, and ordered Barrera to drop the items he was holding and to get on the ground. SUF 10.

Barrera continued to walk away, telling the officers he was not a threat. SUF 11. When Barrera reached the end of Garfield Place, which terminated in a cul-de-sac, Barrera began to walk up a residential driveway, past a parked truck, and towards a garage door. SUF 5, 18. Barrera then turned around and approached Sergeant Krause. SUF 19 (disputed on other grounds, such as the speed of the approach and whether the golf club was raised.) Sergeant Krause raised his firearm but did not

2

1   fire.  SUF 20.  Approximately twenty feet away from
2   Sergeant Krause, Barrera "fell, dropped the golf club onto the
3   driveway, immediately jumped up, and ran in the opposite
4   direction toward a fence on the side of [the property]."  Id.
5   The three officers gave chase.  SUF 21.
6       Barrera attempted to scale the fence on the side of the
7   property, failed, turned around, and charged at Sergeant Davis
8   from approximately 10-15 feet away.  SUF 24.  Sergeant Davis and
9   Barrera went to the ground.  SUF 25.
10      Officer Lal fired his taser four times at Barrera, pausing
11  briefly between each shot.  SUF 34, 42, 44, 46.  Over the course
12  of 51 seconds, Barrera was tased for 24 seconds.  Id.
13      Officers Hanna Gray and Richard Wright arrived shortly after
14  Sergeant Davis and Barrera hit the ground.  SUF 48-49.  Officer
15  Gray straddled Barrera to hold him down.  SUF 51.  Officer Wright
16  and Officer Lal managed to handcuff Barrera approximately two
17  minutes after the parties went to the ground.  SUF 61.  Sergeant
18  Krause, Sergeant Davis, and Officer Lal physically disengaged
19  from Barrera but remained in the vicinity.  SUF 74-77.
20      Although Barrera was handcuffed and prone, Officers Gray and
21  Wright continued to exert force to keep Barrera on the ground.
22  SUF 78, 80, 83-84.  At one point, Officer Wright placed his knee
23  on Barrera's shoulder.  SUF 87.  Barrera told the officers he
24  could not breathe.  SUF 95.  Officer Gray and Officer Wright
25  continued to hold Barrera down.  SUF 97-98.  After Barrera's
26  statement, Sergeant Krause requested a WRAP device be attached to
27  Barrera's feet.  SUF 103.  A WRAP is a mesh restraint system that
28  is secured around a suspect's legs and ankles to restrict leg

3

1  movement.  SUF 105.  Officer McManus arrived and began attaching
2  the WRAP.  SUF 107, 109.  Officers Gray and Wright continued to
3  hold Barrera down.  SUF 110-111.
4      Shortly after the WRAP was administered, Barrera became
5  unresponsive.  SUF 120-22.  Officers administered CPR, but it was
6  ineffective.  SUF 123-24.  Barrera was transported to a hospital,
7  where he was pronounced dead.  SUF 125.  Toxicology revealed
8  1800 ng/mL of methamphetamine in Barrera's system.  SUF 126.
9  Plaintiffs sued asserting § 1983 claims under the Fourth and
10 Fourteenth Amendments, against which Defendants asserted
11 qualified immunity.

         II.   OPINION

   A.   Legal Standard

   Qualified immunity protects government officials from
liability for money damages unless their conduct violates
"clearly established" law that a reasonable public official
would have known.  Pearson v. Callahan, 555 U.S. 223, 231
(2009).  There are two conditions necessary to defeat an
assertion of qualified immunity.  Saucier v. Katz, 533 U.S. 194,
200 (2001).  First, the facts alleged, taken in the light most
favorable to the plaintiff, must establish a constitutional
violation.  Id.  Second, the constitutional right that was
violated must have been "clearly established" at the time of the
alleged violation.  Id.  If either condition is not met,
defendants are entitled to qualified immunity.
///
///

B.  Discussion

Here, because the second question is clearly dispositive, the Court exercises its discretion to address it first. Pearson, 555 U.S. at 242.  A constitutional right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Hope v. Pelzer, 536 U.S. 730, 744 (2002).  "[W]hether the violative nature of particular conduct is clearly established" is a question to be answered "not as a broad general proposition," but with reference to the facts of specific cases.  Mullenix v. Luna, 577 U.S. 7, 12. Although the Supreme Court does not require a case directly on point for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  White v. Pauly, 580 U.S. 73, 77 (2017).

"The precedent must be 'controlling'—from the Ninth Circuit or the Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction."  Martinez v. City of Clovis, 943 F.3d 1260, 1275 (9th Cir. 2019) (quoting Sharp v. Cnty. of Orange, 871 F.3d 901, 911 (9th Cir. 2017)).  Cases decided after the alleged constitutional violation cannot create clearly established law for purposes qualified immunity because reasonable officers are "not required to foresee judicial decisions that do not yet exist in instances where the [constitutional] requirements . . . are far from obvious." Kisela v. Hughes, 138 S. Ct. 1148, 1154 (2018).

Plaintiffs contend that Defendants violated their constitutional right to familial association two ways.  First,

5

they claim that Officer Lal violated their Fourteenth Amendment right when he tased Barrera repeatedly during his arrest.  Pls.' Suppl. Brief at 9.  Second, Plaintiffs claim that Defendants Gray, Wright, Lal, Davis, and Krause violated the Fourteenth Amendment when they directly or integrally participated in holding Barrera face-down after he was handcuffed, despite his pleas for air.  Id. at 5-8.  Plaintiffs assert that both the tasing during the arrest and the use of compressive force after the arrest contributed to Barrera's death in a manner that "shocks the conscience" under the Fourteenth Amendment.

To establish that their right to familial association was clearly established, Plaintiffs submit three cases, arguing that Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011), placed beyond debate that excessive tasing violates the Fourteenth Amendment and that Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052 (9th Cir. 2003), and Garlick v. County of Kern, 167 F. Supp. 3d 1117, 1170 (E.D. Cal. 2016), clearly establish the violative nature of using compressive downward force against a handcuffed and prone individual.  The Court reviews Drummond and Garlick first.

In Drummond, the Ninth Circuit held that Anaheim police officers violated the Fourth Amendment's prohibition on excessive force when they used their body weight to hold Drummond down for over twenty minutes after he was handcuffed, despite his repeated insistence that he could not breathe, causing him to pass out and ultimately fall into a coma. Drummond, 343 F.3d at 1054-1055.  This case puts officers on

6

notice that the prolonged use of compressive force on a detained individual who is prone and handcuffed is constitutionally excessive.

In Garlick, the district court relied on Drummond in its opinion denying qualified immunity for defendants on Garlick's excessive force and familial association claims, finding that Drummond clearly establishes the law that prolonged use of bodyweight on a prone suspect risked asphyxia in an unconstitutional manner. Garlick, 167 F. Supp. 3d at 1171-72, n.33 (discussing Drummond at length before denying qualified immunity in a footnote).

Garlick, however, does not address whether Drummond, a case about excessive force under the Fourth Amendment, clearly establishes law in the context of a Fourteenth Amendment familial association claim. Other courts in this circuit have also posed but not answered this question. See, e.g., Wroth v. City of Rohnert Park, No. 17-cv-05339-JST, 2019 WL 1766163, at *13 (E.D. Cal. Apr. 22, 2019) ("assum[ing] without deciding that Drummond's Fourth Amendment excessive force holding could clearly establish rights under the Fourteenth Amendment Due Process Clause, despite the different standards for constitutional violations").

It is undisputed at this stage that Drummond clearly establishes the law that using bodyweight to apply compressive force to a prone and handcuffed suspect for a prolonged time is unconstitutional. The Ninth Circuit mandate, when it affirmed the Court's denial of qualified immunity on Plaintiffs' Fourth Amendment claim, stated that "Drummond is sufficiently similar

1  to this case that the Defendants would have been on notice that,
2  when Barrera was handcuffed and prone on the ground, additional
3  restraint, as applied here, is unconstitutionally excessive."
4  Mandate at 4.
5      However, an excessive force claim under the Fourth
6  Amendment is different from a familial association claim under
7  the Fourteenth Amendment.  As the Supreme Court established in
8  Graham v. Connor, an excessive force claim "should be analyzed
9  under the Fourth Amendment and its 'reasonableness' standard
10 rather than under a 'substantive due process' approach" under
11 the Fourteenth Amendment.  490 U.S. 386, 395 (1989).  Further,
12 reasonableness is to be judged objectively "from the perspective
13 of a reasonable officer on the scene, rather than with the 20/20
14 vision of hindsight."  Id. at 394-97.
15     A familial association claim, by contrast, is evaluated
16 under a "shocks the conscience" standard, which requires either
17 a "purpose to harm" or "deliberate indifference" to a person's
18 constitutional rights.  Wilkinson v. Torres, 610 F.3d 546, 554
19 (9th Cir. 2010).  When an officer has time to deliberate, the
20 standard for shocking the conscience is "deliberate indifference
21 or reckless disregard for [an individual's] rights," meaning a
22 "conscious or reckless disregard of the consequences of one's
23 acts or omissions."  Id.  When an officer lacked time to
24 deliberate, such as when an emergency evolves quickly, the
25 standard for shocking the conscience is when an officer acts
26 "with a purpose to harm unrelated to a legitimate law
27 enforcement objective."  Porter v. Osborn, 546 F.3d 1131, 1137
28 (9th Cir. 2008).  Unlike the objective reasonableness standard

8

of an excessive force claim, the "shocks the conscience" standard requires a subjective inquiry into whether an "official kn[ew] of and disregarded an excessive risk." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Because the standards are different and because a familial association claim requires a further subjective inquiry, the Court holds that an excessive force case under the Fourth Amendment does not put an officer on notice that his conduct may violate a plaintiff's right to familial association under the Fourteenth Amendment. Objective reasonableness, reckless indifference, and purpose to harm fall on a continuum of culpability, with each successive standard requiring a greater presence of mind on behalf of the actor to be liable for his actions. Because deliberate indifference is a higher bar than objective unreasonableness, it is possible for one's actions to violate the Fourth Amendment without violating the Fourteenth Amendment. As such, notice that one's action violates the Fourth Amendment does not put one on notice that one's action violates the Fourteenth Amendment.

This Court's reasoning is bolstered by the Ninth Circuit's opinion in Perkins v. Edgar, No. 21-55552, 2022 WL 14476272, at *1-2 (9th Cir. Oct. 25, 2022).[1] In Perkins, the Ninth Circuit affirmed a district court's denial of qualified immunity on a Fourth Amendment excessive force claim, citing Drummond, but

---

[1] Although Perkins is unpublished, U.S. Ct. of App. 9th Cir. Rule 36-3 provides that an unpublished order issued on or after January 1, 2007 may be cited to the courts of the 9th circuit in accordance with the Federal Rules of Appellate Procedure 32.1, permitting the citation of unpublished opinions for their persuasive value.

9

reversed the court's denial of qualified immunity on Fourteenth Amendment claims for familial association and inadequate medical care. Id. While the Ninth Circuit "reaffirmed that an individual can assert a Fourteenth Amendment claim for loss of companionship and familial association in a police excessive force case," it held that "there is no sufficiently analogous precedent for the loss of familial relations claim here" and thus the officers did not violate the plaintiffs' Fourteenth Amendment rights. Id. The Ninth Circuit's analysis, which discussed Drummond squarely in the context of the Fourth Amendment claim, but not the Fourteenth Amendment claim, implies that while Drummond clearly establishes the law in the excessive force context, it does not establish the law in a familial association context.

Plaintiffs disagree, contending that "[w]hile a Fourteenth Amendment claim and a Fourth Amendment claim are evaluated under different standards, these claims relate to the same core rights vis-à-vis law enforcement and substantially overlap." Pls.' Suppl. Brief at 9 (citing Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015)). Kingsley, however, does not apply to the present case. In Kingsley, the Supreme Court invoked the standards of a Fourth Amendment excessive force claim to analyze a pretrial detainee's Fourteenth Amendment excessive force claim. The fact that two excessive force claims share a standard even when they derive from different constitutional amendments does not necessarily mean that the Fourth Amendment's objective reasonableness standard may be ported to other Fourteenth Amendment claims outside of claims brought by a pre-trial

10

detainee.  As such, Plaintiffs' citation to Kingsley is unpersuasive to the Court.  Accordingly, the Court finds that Drummond and Garlick, which relies on Drummond, do not clearly establish that the prolonged use of compressive force on a prone and restrained suspect violates the suspect's family's right to familial association under the Fourteenth Amendment.

Similarly, the Court finds that Mattos, a Ninth Circuit case about a taser used in excessive force, does not put Officer Lal on notice that his conduct runs afoul of the Fourteenth Amendment.  Mattos, 661 F.3d at 452 (holding that the officers violated the Fourth Amendment in using their tasers but nevertheless granted qualified immunity because the law was not clearly established at the time).  For the same reasons articulated above, the Court declines to extend the Fourth Amendment reasoning in Mattos to clearly establish law in the context of the Fourteenth Amendment.  As such, the Court finds that the law was not clearly established at the time that Officer Lal allegedly violated Plaintiffs' familial association rights when he tased the decedent.  For this reason, qualified immunity is appropriate for Officer Lal.

### III.  ORDER

For the reasons stated above, the Court finds not every reasonable officer at the time of the incident would have known, beyond debate, that their conduct violates the Fourteenth Amendment.  Accordingly, the Court GRANTS qualified immunity to Defendants Gray, Wright, Lal, Davis, and Krause on Plaintiffs' § 1983 Familial Association claim under the Fourteenth Amendment.

Summary judgment is GRANTED for Defendants on this claim.

IT IS SO ORDERED.

Dated: June 12, 2023

_____
JOHN A. MENDEZ
SENIOR UNITED STATES DISTRICT JUDGE